311 So.2d 480 (1975)
Joseph A. BLAND et al.
v.
INTERSTATE FIRE AND CASUALTY CO. et al.
No. 6739.
Court of Appeal of Louisiana, Fourth Circuit.
April 15, 1975.
Edmond R. Eberle, New Orleans, for plaintiffs-appellants.
*481 Porteous, Toledano, Hainkel & Johnson, John J. Hainkel, Jr., and E. Ross Buckley, Jr., New Orleans, for defendants-appellees, A.J. Melancon and Mary Melancon.
Reuter & Reuter, Arthur C. Reuter, Jr., New Orleans, for third party defendants-appellees, Joseph Bland and Interstate Fire and Cas. Co.
Before SAMUEL, LEMMON and BOUTALL, JJ.
LEMMON, Judge.
This litigation involves a two-car collision. Plaintiffs Joseph Bland and Davis Alexander, the driver and passenger respectively in one automobile, have appealed from a judgment dismissing their damage suit against the driver of the other vehicle after a trial on the merits. The principal issue is whether the record supports the trial judge's finding that Bland was concurrently negligent.
The accident occurred about dusk on U. S. Highway 90 in St. Charles Parish. At the point of the collision the east-west highway was straight and consisted of four traffic lanes divided by a neutral ground approximately eight feet wide. The posted speed limit was 55 miles per hour. Both vehicles had their headlights on at the time.
Just before the accident occurred, Bland was traveling west on the highway, while Mrs. Mary Melancon, driver of the other car, was entering the highway from a side road.
Bland testified that he was traveling in the right or outside lane at about 45 miles per hour; that he saw Mrs. Melancon stopped at the stop sign when he was about a block away from the intersection; that when she entered the highway from his left, he continued at the same speed, having no reason to alter his course of driving; that she crossed the two eastbound lanes and the neutral ground area and "kept coming," making a left turn and striking the left rear fender of his vehicle just as he cleared the intersection; and that he applied his brakes only after being struck.
On the other hand, Mrs. Melancon testified that she stopped for the stop sign and waited for several eastbound vehicles to pass; that when she looked to her right, she saw two westbound cars at least two blocks away (beyond the Bunny Quick Store, which was subsequently established to be 625 feet from the intersection); that she had proceeded across the eastbound lanes, had completed a left turn, had traveled about half a block in the inside lane, and had attained a speed of about 30 miles per hour when she felt an impact on the right front door. She admitted she neither paused nor looked to the right again when she reached the median area because "the cars were so far down that I just presumed I had a clear turn."
Mrs. Melancon's passenger verified that the very slight impact did not occur until they had completed the turn and straightened out in the inside lane.
Bland's vehicle came to rest in the right lane (perhaps with his right wheels on the right shoulder) 293 feet from the intersection. A single skid mark was found near the right edge of the road, the record being unclear whether the skid mark was on the highway or on the right shoulder. The skid mark began just past the intersection and ended at the point where Bland's right rear tire came to rest. No glass, dirt or other debris was found on the highway.
The versions conflict as to whether the impact occurred in the left or right westbound lanes and as to whether the collision was virtually in the intersection or a half block up the highway. The right wheel skid mark, beginning approximately in the intersection and located near the right edge of the roadway, belies Mrs. Melancon's version that Bland crossed the center line and performed a sideswiping *482 maneuver a considerable distance beyond the intersection. This physical evidence further supports Bland's version that he had just traversed the intersection when struck on the rear fender and that he immediately applied his brakes, setting down the skid mark. Finally, the location of the minor damage on Bland's left rear fender near the taillight and on Mrs. Melancon's right front door indicates Bland's version as more plausible.
We therefore conclude Mrs. Melancon's negligence in failing to yield the right of way and in encroaching into Bland's lane at some point in the vicinity of the intersection was a legal cause of the accident. We cannot conclude, however, from the record that Bland was contributorily negligent.
The investigating officer testified that Bland stated he was traveling 65 miles per hour and that Bland smelled of alcohol and was staggering. Other witnesses established that Bland's speech was slurred and his coordination was impaired. The trial judge's finding of contributory negligence was primarily founded on drunkenness and excessive speed. While we agree that the record supports factual findings that Bland was intoxicated and that he was exceeding the speed limit by about 10 miles per hour, defendants have failed to prove that either of these factors was a contributing cause of the collision.
The fact that a motorist involved in an accident was speeding or intoxicated does not in and of itself require a finding of liability. Speed and intoxication do not directly cause accidents, but rather influence behavior and result in acts or omissions which cause accidents.
The record does not point up any act on Bland's part which was a causative factor in this accident. Neither does the record indicate that Bland failed to do anything he should have done which would have prevented the accident from the time that he was or should have been aware of the impending danger.
A motorist traveling on a highspeed, multilane highway is not required to anticipate that a motorist entering the highway will not yield the right of way. Mrs. Melancon's entering the highway and crossing the traffic-free eastbound lanes did not serve to place a westbound motorist on notice that she would not stop or pause momentarily in the neutral ground area and yield the right of way to westbound traffic. By the time Bland knew or should have known she was not going to respect his right of way, it was too late for him to take any evasive action. Mrs. Melancon's sudden and unexpected turning into the westbound lanes and her encroaching into Bland's lane left him no opportunity for defensive reaction, regardless of his speed or state of intoxication, and the facts that his judgment was impaired by drinking and his ability to control the car was impaired by excessive speed were of no consequence in the determination of causation.
Accordingly, we conclude Mrs. Melancon was solely liable for the accident.

QUANTUM
After the very slight collision, which occurred on Tuesday, November 10, 1970, Bland and Alexander told the investigating officer they were not injured. At the time both were employed by the City of New Orleans, working on a garbage truck. (There was no claim for loss of wages.) Employment records indicated Bland took two days of sick leave on the following Monday and Wednesday, while Alexander took one day of annual leave on Wednesday. Except for two more days of sick leave taken by Alexander in the middle of December, neither missed any additional work on account of sickness through the end of March, 1971.
Neither Bland nor Alexander sought medical attention for the injuries allegedly received in the accident until January 14, *483 1971, more than two months later. Bland explained that he did not have money for this purpose, although he admitted having received free treatment before the accident at both Charity and Veterans Hospitals. Alexander explained that he didn't seek medical attention because "I didn't really think anything of it." Both admitted that the first medical consultation was arranged by their lawyer.
Each plaintiff testified he received medical treatment for seven weeks, and each claimed he suffered residual effects at the time of trial more than two years after being discharged. The medical proof, however, was insufficient to support these claims of extensive pain and suffering.
At the first day of trial in March, 1973, plaintiffs' counsel attempted to introduce the doctor's deposition under C.C.P. art. 1428(3)(d), on the grounds the witness was unable to attend because of sickness. Upon objection that the grounds were not proved, the court refused to allow introduction of the deposition at the time and withheld ruling on the objection until the next day of trial in May, suggesting to plaintiffs' counsel that he would set an evidentiary hearing on the offer in advance of trial, if necessary.
At the second day of trial counsel had neither subpoenaed the doctor nor invoked an evidentiary hearing by rule. Counsel again offered the deposition, accompanied by a certificate of the doctor's physician that the witness was unable to testify because of sickness. Defendants again objected to the offer, but the trial judge overruled the objection.
In this respect we believe the trial judge erred. The medical certificate offered in support of the introduction of the deposition was clearly hearsay evidence and should have been excluded. Without the medical certificate there was no basis for allowing introduction of the deposition. We therefore decline to consider the deposition testimony.[1]
The record (without the deposition) does not establish that plaintiffs' need for medical treatment in January was caused by the accident. The evidence does establish, however, that although the impact was very slight, Bland and Alexander were shaken up when the brakes were applied suddenly. Bland's wife also verified his complaints of suffering after the accident.
Considering all the circumstances surrounding the delayed medical consultation and the lack of competent medical evidence, we conclude plaintiffs proved only that they sustained slight injuries with temporary, minimal disability. We believe the sum of $250.00 each will adequately compensate plaintiffs for their general damages. We further award Bland $50.00 for his property damage, the extent of which was shown by photographs and testimony. (There was no evidence as to the value of this damage, claimed to be $82.84.) Claimed medical expenses were not proved related to the accident.
For these reasons, the judgment of the trial court is reversed, and it is now ordered that there be judgment against Mr. and Mrs. A. J. Melancon and in favor of Joseph Bland in the amount of $300.00 and in favor of Davis Alexander in the amount of $250.00, together with legal interest from the date of judicial demand until paid. All costs of court are assessed against Mr. and Mrs. Melancon.
Reversed and rendered.
NOTES
[1] We further decline to remand for further evidence in support of the offer of the deposition, inasmuch as plaintiffs were well warned to have evidence on which to base the offer or to suffer the consequences.