426 So.2d 205 (1982)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Floyd Smith
v.
Harry HOERNER, George Bowie, Caterina Summers, Scotty Tubbs and Gail Jenkins.
No. 12059.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1982.
Rehearing Denied February 24, 1983.
Writ Denied April 15, 1983.
*206 Jackson & Stovall, John J. Jackson, III, New Orleans, for plaintiff-appellant.
Drury & Lozes, Felicien P. Lozes, New Orleans, for defendants-appellees.
Before GULOTTA, GARRISON and BARRY, JJ.
GARRISON, Judge.
This is an appeal from a judgment of the district court rendered in accordance with a jury verdict dismissing all claims resulting from a multi-vehicle collision which occurred on January 3, 1978. From that judgment, which we affirm, Dr. Harry Hoerner perfected this appeal.
The collision occurred on a clear day on Interstate 610 near the Interstate 10 junction. All vehicles were proceeding in the same direction. A disabled Toyota was parked in the emergency lane of said highway and its driver flagged vehicle # 1, a wrecker driven by George Bowie. The wrecker apparently had stopped and was proceeding to back up to assist the Toyota when vehicle # 2, driven by Dr. Hoerner, came to a squealing stop behind the wrecker. *207 There exists contradictory testimony as to the exact location of the vehicles prior to the collision. Thereafter, vehicle # 2 was rear ended by vehicle # 3, which was driven by Caterina Summers. Vehicle # 3 was then involved in a collision with vehicles # 4, # 5 and # 6. Vehicle # 4 was driven by Floyd Smith. Claims by the drivers of vehicles # 5 and # 6 have been settled.
The instant case was tried before a jury which, in answer to special interrogatories, determined the following:
(1) that Dr. Hoerner was negligent and that his negligence was a cause of the accident;
(2) that Caterina Summers was negligent and that her negligence was a cause of the accident; and
(3) that George Bowie was not negligent.
The standard of appellate review of facts is provided for in La. Constitution of 1974, Art. 5 § 10(B):
"Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts."
As an aid to the exercise of the appellate function of a review of the facts, the Supreme Court in Davis v. Owens, 368 So.2d 1052 (La.1979) reiterated the following:
"In reviewing the questions of fact and conclusions of fact involved in this suit for damages, the Court of Appeal is mandated to leave undisturbed factual findings of the trial court based upon evidence which furnishes a reasonable factual basis for those findings, unless it finds manifest error. `Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.' Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973). If, however, the appellate court concludes that the trial court's factual findings are clearly wrong, the mere fact that some record evidence appears which would furnish a reasonable factual basis for the contested findings does not require affirmance. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
With these principles in mind, we proceed to review the facts and circumstances in the instant case.
The focal point of this factual dispute is the exact location of the vehicles prior to the collision. There exists inconsistent testimony as to this factual determination.
According to the testimony of George Bowie (vehicle # 1), after he saw the disabled car, he proceeded to put on his emergency flashers, slow down and stop 4 to 5 feet before the end of the emergency lane, leaving his left front tire on the emergency lane line and his left fender over said line into the right travel lane. After stopping, he put the wrecker in reverse while looking into his rear view mirror, and saw Dr. Hoerner come to a squealing stop behind him and to the left of the wrecker. More specifically, Dr. Hoerner's right front fender was just inside the wrecker's left bumper. Bowie further testified that Dr. Hoerner would have had room to pass him without having to change lanes.
In contrast, Dr. Hoerner stated that he was traveling 50 miles per hour in the right lane when he sighted the disabled Toyota and the wrecker. At the time of sighting, the two vehicles were approximately ½ mile ahead of Hoerner and in the right travel lane. In addition, he testified that the wrecker came to a stop in the right travel lane and appeared to be preparing to back up to assist the disabled car when Hoerner came to a squealing stop several feet behind the wrecker. Hoerner stated his vehicle stopped totally within the right travel lane. Hoerner further stated he checked his mirror prior to stopping in order to determine if he had traffic clearance to go around the wrecker. Thereafter Hoerner's vehicle was rear ended by vehicle # 3 driven by Caterina Summers.
Further contradictory testimony was illicited from Caterina Summers who testified that she was traveling 40 miles per hour in the left lane. She was approximately 50 *208 feet away when she saw Dr. Hoerner try to merge into her lane. She stated that she put on her brakes and slid into his left rear end. After spinning clockwise, her vehicle was involved in three other collisions. She stated that both the wrecker and Dr. Hoerner's vehicle were in the right travel lane; however, the tire of the Hoerner vehicle was in her lane.
Floyd Smith, driver of vehicle # 4, testified that he observed both the wrecker and Dr. Hoerner's vehicle stopped partially in the emergency lane and partially in the right lane. Thereafter he witnessed Caterina Summers' vehicle rear end Dr. Hoerner's vehicle. He further stated that Summers took no evasive action.
George Bowie, Dr. Hoerner and Caterina Summers were each given traffic citations. It is well established that under Louisiana law the violation of a traffic ordinance is negligence per se but this presumption is rebuttable. For such negligence to bar recovery it must have been a proximate cause of the resulting collision.
In Laird v. State Farm Insurance Co., 290 So.2d 343, 347 (La.App. 4th Cir.1974); rehearing denied 1974; writ refused 1974, this court stated:
"In accordance with the method outlined in Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (La.1970) we determine legal cause by first determining whether the act complained of was a substantial factor in causing the accident, then by determining what duty was imposed and whether the risk created by a breach of that duty was one for which the statute intended to offer protection and finally by determining whether there was a breach of that duty.
"Every act leading up to an accident is not a cause-in-fact; to be deemed a legal cause, the act must be a substantial factor without which the accident would not have occurred."
Before applying the above methodology to the facts at hand we must first look to these pertinent provisions of Louisiana's Highway Regulatory Act which provides:
"Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply.
"(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." R.S. 32:79.
"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." R.S. 32:81.
"Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
"The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic." R.S. 32:141.
Additionally, under the traffic laws of Louisiana, a motorist is required to maintain reasonable vigilance or "to see that which he should have seen" and to exercise reasonable care.
It is firmly established that the operator of a following vehicle is required to keep his car under control, to observe closely a forward vehicle, and to follow at a safe distance. If a rear end collision occurs, the following motorist is presumed negligent. In Viator v. Gilbert, 206 So.2d 106, 109 (La.App. 4th Cir.1968), we stated that:

*209 "When the lead vehicle makes a sudden stop, or one in order to execute an illegal maneuver, but the operator of a second vehicle is able to bring his car to a stop without a collision, the first driver is not liable if a third vehicle collides with the second. See Gandy v. Arrant, La.App., 50 So.2d 676; Hernandez v. Pan American Fire and Casualty Co., La.App., 157 So.2d 923."
In order for the following motorist who collides with a preceding vehicle to exculpate himself, he must show that he kept his vehicle under control, that he closely observed the forward vehicle, that he followed at a safe distance under the circumstances, or that the driver of the lead vehicle negligently created a hazard which the following vehicle could not reasonably avoid.
In light of the foregoing, it is upon the facts as presented in this litigation that we must review the determinations of causation.
The jury found that George Bowie was "not negligent which was a cause of the accident (sic)." We agree. Though Bowie received a traffic citation which is negligence per se, he was not the cause of the accident. He merely stopped to assist a disabled automobile. The jury either found that the wrecker was not parked in the right travel lane, or if some part of it was, then there was still sufficient clearance for Dr. Hoerner to proceed safely around the wrecker. It would appear from the testimony and evidence that all parties sighted both the wrecker and the disabled vehicle in time to avert said collision had they used due diligence. The evidence furnishes a reasonable factual basis to support the jury's findings and is not manifestly erroneous.
As pertains to Dr. Hoerner, the jury found him to be contributorily negligent and that his negligence was a cause of the collision, hence recovery is barred. From the contradictory testimony illicited at trial, the jury could find Dr. Hoerner contributorily negligent in any or all of the following: in following too close; in failing to maintain proper vigilance; in traveling too fast under the circumstances; in not seeing what he should have seen under the circumstances; in stopping in the right lane of traffic; or in obstructing a portion of left travel lane.
We agree with the jury's finding, that his actions were a cause of the collision and that but for his negligence in following too close, this accident would not have occurred.
R.S. 32:81 imposes a duty on a motorist not to follow another vehicle closer than is reasonable and prudent, having due regard for the speed of such vehicle, the traffic conditions and the condition of the highway.
When Dr. Hoerner violated the statute he created the exact risk the statute was designed to prevent.
We agree with the jury's determination that Dr. Hoerner's dereliction was a substantial factor in causing the accident, that the statute imposed a duty upon him not to follow too close, that he breached that duty and that his breach created a risk which was within the scope of protection intended by the statute.
Hoerner's reliance on the sudden emergency doctrine is misplaced. The doctrine has been used to excuse a motorist's actions which, after sufficient reflection, prove to be a poor choice of alternatives. However, this doctrine does not excuse improper vigilance, following too close, failure to see an emergency situation in sufficient time to avert a collision, or creation of the emergency by his own negligence.
Under any version of this collision, Caterina Summers was contributorily negligent and a cause of the collision. When she reached the incline there was nothing to obstruct her view of the wrecker and Dr. Hoerner's vehicle. Had she been keeping a proper lookout, been alert, and not followed so close, she would have seen the stopped vehicles in time to stop or to safely change lanes. She did not rebut the presumption of negligence that exists when a motor vehicle rear ends another. Likewise, her reliance on the sudden emergency doctrine is unfounded as she caused her own emergency situation.
*210 Furthermore, Summers' inattention was a cause in fact of the accident. The breach of her duty to observe what she should have seen created a risk of colliding with this traffic obstruction, thereby making her legally liable for the resulting collision.
The jury found that the combined negligence of Dr. Hoerner and Caterina Summers was such that but for their negligence, the accident would not have occurred. We find this clearly established by a preponderance of the evidence.
Accordingly, under our scope of appellate review where there is conflicting testimony and reasonable evaluations of credibility, reasonable inferences of fact shall not be disturbed upon appeal absent manifest error. We find no manifest error.
For the reasons discussed the judgment of the district court is affirmed.
AFFIRMED.