593 So.2d 695 (1991)
Daryl WILSON
v.
U.S. FIRE AND CASUALTY COMPANY.
No. 90-CA-2232.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1991.
Rehearing Denied March 18, 1992.
Writ Denied May 1, 1992.
*696 Salvador E. Gutierrez, Jr., Mary Ann Hand, Gutierrez and Hand, New Orleans, for plaintiff.
Sidney J. Angelle, Wayne R. Maldonado, Lobman, Carhahan & Batt, Metairie, for defendant.
James S. Rees, III, Albert D. Giraud, Simon and Rees, New Orleans, for defendants.
*697 Before WARD and ARMSTRONG, JJ., and GULOTTA, J. Pro Tem.
ARMSTRONG, Judge.
Plaintiff, Daryl Wilson appeals the trial court's judgment adopting the jury's findings in this personal injury cause of action. Defendants appeal that part of the trial court's judgment assessing costs against them. We affirm the trial court's judgment.
This matter arises out of an automobile accident which occurred on or about May 15, 1988. Plaintiff, Daryl Wilson, was operating a vehicle in the course and scope of his employment as deputy with the St. Bernard Parish Sheriff's Office. He heard a call on the police radio and decided to proceed to the scene to lend his assistance. As he proceeded towards the scene of the call, his vehicle collided with a vehicle being operated by Charol Bachemin.
Mr. Wilson was injured in said automobile accident. On May 9, 1989, he filed suit against U.S. Fire and Casualty Company, in its capacity as the uninsured/underinsured motorist insurer for the St. Bernard Parish Sheriff's Office. Plaintiff accepted $28,110.00 in settlement from Liberty Mutual Insurance Company, the liability insurer for Ms. Bachemin, prior to filing his lawsuit.
On March 6, 1990, plaintiff supplemented and amended his petition to add United States Fidelity and Guaranty Company as a defendant. He added U.S. Fidelity and Guaranty Company in its capacity as his own alleged uninsured/underinsured motorist insurer.
A trial on the merits was held on this matter on August 7, 8, 9, 10, 1990. An overall amount of $17,825.00 was awarded to Daryl Wilson. However, he was found to be fifty-one (51%) at fault for the accident in question. Therefore, the overall amount to which he would have been entitled would have been $8,734.25. Recognizing defendants' right to a credit for the amounts already offered to plaintiff by Liberty Mutual Insurance Company and accepted by him, the trial court stated in its judgment:
Accordingly, plaintiff takes naught by these proceedings.
In the same judgment, the court stated as follows:
It is further ordered, adjudged and decreed that defendants, U.S. Fire and Casualty Company and U.S. Fidelity and Guaranty Company pay all costs of these proceedings.
Both parties appeal the trial court's judgment.

COMPARATIVE FAULT
Plaintiff argues that the evidence proves that Charol Bachemin was 100% at fault in causing the accident. Plaintiff claims that Charol Bachemin violated three different traffic ordinances: La.R.S. 32:122, 32:125 and 32:416.1. He argues that violation of a traffic ordinance is negligence per se. State Farm Mutual Auto. Ins. Co. v. Hoerner, 426 So.2d 205 (La.App. 4th Cir.1982) writ denied 433 So.2d 154 (La.1983).
Plaintiff argues that he was in no way at fault in causing this accident. When Charol Bachemin failed to stop, plaintiff veered into the right lane to avoid the accident.
Defendants contend that the jury did find that Charol Bachemin was partially at fault in causing the accident. Defendants argue that plaintiff is incorrect in his claim that Charol Bachemin violated three traffic ordinances and such violations constituted negligence per se. La.R.S. 32:122 and 32:125 assume that Charol Bachemin could see an approaching vehicle. La.R.S. 32:416.1 concerns the so-called "minor's curfew" for driving between the hours of midnight and 5:00 a.m. However, this statute is in no way relevant to the cause of the accident in question. Plaintiff did not offer any evidence to suggest that an alleged violation of this statute was a proximate cause of the accident in question. The accident could have happened just as easily a few minutes prior to midnight as opposed to a few minutes after.
Defendants maintain that while it is true that the violation of a traffic ordinance is negligence per se, the presumption is rebuttable. *698 Additionally, for such negligence to bar recovery, it must have been a proximate cause of the resulting collision. State Farm Mutual Auto. Ins. Co. v. Hoerner, supra. The time at which the accident occurred was not shown to be in any way related to the accident. Finally, it should be noted that Charol Bachemin received no traffic citations in connection with this automobile accident.
There was evidence and testimony introduced at trial which showed that at the time of the accident plaintiff was speeding down Judge Perez Highway in the darkness of the early morning on May 15, 1988, without utilizing the flashing lights or siren available on his police car. The jury's assessment of comparative fault was a finding of fact based upon sufficient evidence and made after credibility determinations. We find no manifest error.

PRESUMPTION OF LIABILITY
In special requested jury charges which were submitted to the court prior to trial, the plaintiff requested that Plaintiff's Requested Charge No. 5, which reads as follows, be given to the jury:
A left turning motorist, when involved in a collision is burdened with a presumption of liability for the accident. She must show she was free from negligence to avoid the imposition of liability. Gibson v. Fisher, 401 So.2d 565 (La.App.3d Cir.1981).
Plaintiff argues that the court refused to give his instruction as requested and in fact erroneously charged the jury that there was no presumption of negligence for a left-turning motorist. Plaintiff claims that he timely objected to the erroneous charge being given to the jury as well as to Plaintiff's Requested Charge No. 5 not being given to the jury.
Plaintiff contends that the court committed reversible error by not instructing the jury that Charol Bachemin was burdened with a presumption of liability for the accident. Plaintiff cites Dunn v. Snyder, 388 So.2d 450 (La.App.2d Cir.1980) to argue that a presumption exists that the driver making a left turn is liable for any resulting accident. See also: Gibson v. Fisher, 401 So.2d 565 (La.App. 3d Cir.1981), Casimere v. Ryder Truck Rentals, Inc., 324 So.2d 855 (La.App. 4th Cir.1975) writ denied 329 So.2d 453 (La.1976), Bennett v. U.S. Fid. & Guar. Co., 373 So.2d 1362 (La.App. 1st Cir.1979), Washington Fire and Marine Insurance Co. v. Fireman's Insurance Company, 232 La. 379, 94 So.2d 295 (1957).
Defendants argue that the only controlling case cited by plaintiff is Washington Fire and Marine Insurance Company v. Fireman's Insurance Company, supra, which provides that when a left-hand turn is being made and an accident occurs, the burden rests heavily on the driver who is making the left-hand turn to explain how the accident occurred and to show that he was free from negligence. See also: Adams v. Campbell, 420 So.2d 1141 (La. App. 4th Cir.1982). The trial judge adequately instructed the jury that the left-turning motorist involved in a collision "must show he was free from negligence to avoid the imposition of liability."
Under Louisiana law defendants had to show that Charol Bachemin was free from negligence, and the trial court so instructed the jury. The jury charge read:
It is well settled that a left hand turn movement is generally characterized as a dangerous operation, not to be undertaken until the motorist ascertains that it can be made in safety. There is no presumption, however, that the driver of a left turning vehicle is guilty of negligence.
The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction, which are within the intersection or so close thereto as to constitute an immediate hazard. A motorist attempting a left turn is required to exercise a very high degree of care. He should not attempt a left turn unless he has taken every responsible precaution to insure that the turn can be made without endangering approaching motorists. He must show *699 he was free from negligence to avoid the imposition of liability.

We find that the jury charge given by the trial court is a correct statement of the law.
In a related assignment of error, plaintiff objects to the trial court's refusal to give Plaintiff's Requested Jury Charge No. 8 which provided:
The fact that a motorist involved in an accident was speeding does not in and of itself require a finding of liability. Bennett v. U.S. Fid. & Guar. Co., 373 So.2d 1362 (La.App. 1st Cir.1979). Bland v. Interstate Fire & Casualty Co., 311 So.2d 480 (La.App. 4th Cir.1975).
Plaintiff argues that the jury could well have erroneously assumed from the court's instruction that if in fact the plaintiff was found to be speeding that they must impose liability on the plaintiff. Plaintiff argues that this is directly contrary to the law and the jury should not have been so instructed.
Defendants reply that the court adequately addressed plaintiff's concern through its instruction to the jury regarding proximate cause. The charge read:
As to the requirements that the plaintiff's injuries must be caused by Charol Bachemin's conduct or failure to act, I do not mean that the law recognizes only one cause of an injury. Many factors or things may operate at the same time, either independently or together, to cause injury or damage.
We agree. The jury was properly instructed. Above and beyond the evidence that the plaintiff was speeding, the jury was presented with evidence that plaintiff was not properly responding to a simple "signal 103" and that plaintiff did not activate his lights and siren in order to warn motorists of his approach. There were "many factors or things" which the jury considered in allocating percentages of fault for this cause of action.

ADMISSIBILITY OF EVIDENCE
During the trial of this matter the defendants introduced evidence that plaintiff had allegedly been involved in an accident when improperly responding to a signal 103. Plaintiff argues that he objected to the introduction of this highly prejudicial evidence, but the trial judge overruled his objection and allowed it.
Plaintiff states that evidence of other actions or wrongs is totally impermissible by the terms of Article 404 of the Louisiana Code of Evidence. Louisiana courts have long held that character evidence should be excluded in civil cases, in particular where it is offered to prove a person did or did not do an act on a particular occasion. Brannan v. Wyeth Laboratories, Inc., 516 So.2d 157 (La.App. 5th Cir. 1987), Gould v. Bebee, 134 La. 123, 63 So. 848 (La.1913).
Plaintiff further argues that even if Article 404 of the Louisiana Code of Evidence did not specifically apply to this situation, Article 403 of the Louisiana Code of Evidence would still have required the exclusion of the objectionable evidence since its prejudicial effect far outweighed its probative value.
La.C.E. article 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Just prior to the accident in question, plaintiff received a dispatch over his police radio of a "signal 103" which in layman's terms means "disturbance". Louisiana State Trooper Durel had radioed the Sheriff's Office and informed them of "what appeared to be a disturbance between a boyfriend/girlfriend with a little shoving." Plaintiff contends that the dispatch he received was a call for assistance. However, the dispatcher's log on the night of the accident indicated that the call which was dispatched to him was a "signal 103" (disturbance).
The response of a sheriff's deputy to a dispatch is categorized by the Sheriff's Office in terms of three codes, "Code 1", "Code 2", or "Code 3". A "Code 3" response *700 is the maximum response allowed by the department, which allows the sheriff's officer to exceed speed limits. However, a "Code 3" response is an inappropriate response to a "signal 103".
The following cross-examination of plaintiff took place at trial:
Q. Now, Officer, you would not respond to a simple "Signal 103" through a "Code 3" response, would you?
A. No, I would not.
Q. And, you've never done that before?
A. Simple "103", no.
Counsel for appellee then sought to impeach plaintiff on cross-examination regarding prior incidents where plaintiff had responded to a "signal 103" through a "Code 3" response. Plaintiff objected first on the grounds of relevancy and then changed his objection to one based on La. C.E. article 404. The court overruled plaintiff's objection on the basis that "it was proper cross-examination in an attempt to impeach". As recognized in La.C.E. article 404, the basis of plaintiff's objection, evidence of other crimes, wrongs, or acts, may be admissable for other purposes. State v. Kahey, 436 So.2d 475 (La.1983). Impeachment is one such purpose and the trial judge properly allowed defendants to confront the plaintiff with this impeachment evidence. We find that the value of providing the jury both sides of the story outweighs any prejudicial effect which the evidence may have had.

PRESUMPTION OF ADVERSE TESTIMONY
Plaintiff argues that it was very prejudicial for the defendants to infer to the jury that Ms. Barras' testimony would have been adverse to plaintiff when the law clearly provides that the adverse presumption would have operated against defendants.
In their closing arguments, defendants inferred to the jury that Ms. Barras' testimony would have been adverse to the plaintiff since the plaintiff did not call her as a witness to testify. The defendants were aware, however, that Ms. Barras was in fact under subpoena to Mr. Angelle, counsel for U.S. Fire and they in fact chose not to call Ms. Barras as a witness.
In civil cases there is a presumption of adverse testimony by witnesses who are subpoenaed but not called upon to testify. Barrois v. Service Drayage Company, 250 So.2d 135 (La.App. 4th Cir.1971) writ denied 259 La. 805, 253 So.2d 66 (La. 1971). The jurisprudence is well-settled to the effect that where a litigant fails to produce evidence or witnesses available to him and no reasonable explanation is made therefore, the presumption is that the production of such evidence or witnesses would have been unfavorable to his cause. Jackson v. Jackson, 212 So.2d 265 (La.App. 4th Cir.1968) writ denied 252 La. 890, 214 So.2d 717 (1968).
Defendants respond that at no time did plaintiff request the court to instruct the jury regarding a presumption of adverse testimony. La.C.C.P. article 1793(C) provides:
A party may not assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.
Defendants submit that plaintiff had much more access to Gina Barras than any other party. Ms. Barras was plaintiff's own partner. Moreover, plaintiff's attorney was also counsel for the sheriff's office at the time of trial. Plaintiff made the same choice as defendants in not calling Ms. Barras as a witness at trial, and could also be subject to an adverse presumption.
The adverse presumption rule suggested by plaintiff must be tempered by the proposition that a party to a lawsuit need only to prove his case. If he does so by calling one or more witnesses to testify concerning an issue, he should not be penalized because he fails to call still another witness on the subject. Sauve Heirs, Inc. v. Reynaud Construction Company, Inc., 441 So.2d 239 (La.App. 4th Cir.1983).
*701 We find no manifest error in the trial court's failure to instruct the jury that a presumption of adverse testimony existed.

CAUSATION
Plaintiff argues that the facts in this case are very similar to the facts before the court in Pearce v. Baltazar, 529 So.2d 1291 (La.App. 5th Cir.), writ denied 533 So.2d 359 (La.1988). In Pearce, the plaintiff was involved in an automobile accident in which she sustained injuries to her neck. The full extent of the injury to plaintiff's neck, namely ruptured cervical disc, did not manifest itself until two years after the accident. The defendant in Pearce argued that the ruptured disc which occurred more than two years after the accident did not result from that accident but from an intervening event.
Plaintiff claims that in Pearce the court posed a jury interrogatory that was almost identical to the one posed in this case. The court in Pearce asked, "Was the fault of Albert Baltazar a proximate cause of the damages sustained by plaintiff?" to which the jury responded, "yes." The court in Pearce held that by answering in the affirmative, the jury had found that the accident was a proximate cause of all plaintiff's injuries.
The defendant in the Pearce case argued that the small damages awarded by the jury indicated that they found the plaintiff was entitled to compensation only for the immediate injuries incurred in the accident and that the rupture was not related. The trial judge, however, stated he submitted the interrogatory to prevent any confusion as to which accident proximately caused the injury and the appellate court held that since the defendant had not objected to the interrogatory at trial he now waived any objection.
Likewise in the case before this court, there was speculation on the part of the defendant that plaintiff's back injuries may have been caused by a fall from a chair. Plaintiff claims that the interrogatory posed to the jury was designed to eliminate any confusion about which event caused plaintiff's injuries. He argues that the jury found that it was Charol Bachemin's fault, not any other event, that proximately caused his injury and damage. If, in fact, the jury had found that some other event other than Charol Bachemin's fault had caused the injuries to plaintiff then their response to Interrogatory No. 1 would have been "no".
Plaintiff bears the burden of adequately proving a causal connection between the accident and the injuries complained of. Plaintiff submits that the test is whether he has shown through medical testimony that more probably than not the subsequent operations were necessitated by trauma suffered in the accident. Polman v. Mohasco Corp., 371 So.2d 838 (La.App. 4th Cir.1978). Plaintiff contends that he sustained his burden of proof on the medical causation issue and the jury's affirmative answer to the interrogatory addressed to whether Charol Bachemin's fault proximately caused plaintiff's injury and damage supports that conclusion.
Defendants submit that Pearce is readily distinguishable on several grounds. For instance, in Pearce the jury was not presented with any evidence that plaintiff had been involved in a subsequent accident to which plaintiff's injuries could be attributed. In Pearce, the jury was told only about the "possibility" of some subsequent unidentified trauma. There was no evidence whatsoever presented to the Pearce jury which established that a subsequent intervening trauma had occurred. In the instant matter, however, the jury heard evidence including plaintiff's own testimony, which established with certainty that a subsequent intervening accident had occurred and that plaintiff's lumbar complaints arose subsequent to that incident.
Defendants offer another fact which distinguishes Pearce. In Pearce plaintiff had only one injury and one complaint throughout, namely neck pain. She complained of neck pain following the accident, was treated for neck pain following the accident and underwent an operation for the cervical disc. In the case at bar, plaintiff had two separate injuries from two separate events. Because of these distinguishing factors, *702 plaintiff's claimed analogy to Pearce is improper.
Defendants argue that plaintiff did not carry his burden of proving both the existence of injuries and the causal connection between them and the May 15, 1988 accident. Stevens v. Gulf American Fire & Casualty Company, 317 So.2d 199 (La. App. 1st Cir.1975) writ denied 321 So.2d 363 (La.1975). Plaintiff claims that both Dr. Llewellyn and Dr. Olson related plaintiff's neck and back problems to the automobile accident of May 15, 1988. Dr. Llewellyn's statements as to causation for the back complaints were based solely upon the history related to him by plaintiff. Plaintiff did not tell Dr. Llewellyn anything about the collapsing chair incident. Dr. Llewellyn readily admitted that the collapsing of a chair in which a person is sitting could be the cause of disc rupture and further conceded that had the plaintiff told him about the collapsing chair incident, it may have caused him to modify his statements regarding causation.
Defendants argue that Dr. Olson's testimony was not credible. Prior to trial, Dr. Olson's records concerning the plaintiff were subpoenaed for deposition purposes. Dr. Olson's records, as provided in response to the deposition subpoena duces tecum, contained no mention of low back complaints by the plaintiff during his April, 1989, visit. At trial, Dr. Olson produced his medical records concerning plaintiff which had been altered. When questioned by defense counsel, Dr. Olson explained that he altered his notes based on his independent recollection of plaintiff's complaints concerning back pain.
At trial, defendant offered the testimony of Dr. Susan Boston, an expert neurologist, who examined the plaintiff on November 15, 1989, and reviewed plaintiff's medical records and diagnostic films. Dr. Boston testified that it was unlikely that there was any low back injury in the May 15, 1988 automobile accident and opined that the event which precipitated plaintiff's alleged low back pain occurred after she saw him.
Plaintiff claims that he made back complaints to Michael Harrison, the emergency medical technician. Harrison testified that plaintiff had lacerations to his upper back. These lacerations could very well have been the source of plaintiff's alleged complaints of back pain.
With regard to plaintiff's allegation that complaints of back pain were made to Dr. Llewellyn on June 16, 1988, defendant points out that on cross-examination Dr. Llewellyn testified that plaintiff's only complaint to him regarding back pain related to the mid-back, not the lower back. Plaintiff contends that he sustained a lumbar disc injury in the automobile accident which progressively worsened over the course of two years. Not one scintilla of evidence was presented by plaintiff that any lumbar disc problems were sustained in the automobile accident. In fact, the weight of the evidence clearly establishes that plaintiff did not have a problem until after October 23, 1989.
Plaintiff further contends that the collapsing chair incident only injured his neck. However, plaintiff's credibility on this point was impeached. His testimony at trial was that he did not injure his back as a result of the collapsing chair, but his deposition testimony revealed that when he sat down in the chair and fell backward he injured both his neck and his back.
The testimony of plaintiff's own treating physician, Dr. Seltzer, indicated that the plaintiff was asymptomatic and released to full work duties after the car accident. The generic anatomical impairment rating of 10%, assigned by Dr. Seltzer, was based solely on the fact that plaintiff had a fracture and did not represent a functional disability. Additionally, Dr. Boston testified that plaintiff had no disability of the neck and there was no reason he could not work.
Plaintiff's attempt to construe the jury's "yes" response to a jury interrogatory on the special verdict form as an indication that the jury found all of the plaintiff's injuries to be caused by the automobile accident is improper. The jury interrogatory referred to by plaintiff cannot be isolated from the testimony and the evidence which preceded the jury's deliberations *703 and where there is evidence before the trier of fact which furnishes a reasonable factual basis for the verdict, the appellate court will not disturb such a factual finding. Canter v. Koehring, 283 So.2d 716 (La.1973).

QUANTUM
Plaintiff contends that he incurred $42,553.00 in medical bills as a result of his injuries yet the jury only awarded him $2,500.00 in medical expenses, both past and future. Despite the evidence of a permanent disability sustained by him, the jury awarded plaintiff nothing for permanent disability and loss of enjoyment of life and inconvenience. Plaintiff argues that this is clearly an abuse of discretion, particularly in light of the fact that it is undisputed that he sustained a fracture to his cervical spine in the automobile accident. Plaintiff argues that that, in and of itself, should entitle him to an award of permanent disability and loss of enjoyment of life and inconvenience.
The jury awarded nothing for past lost wages although plaintiff maintains that the record reflects his income dropped almost $4,000 the year after the accident. After his back surgery in May of 1990 he was unable to return to work. As a result of his injuries and back surgery, his physical activities are severely restricted. He has been advised to avoid jumping, climbing, repetitive lifting, constant riding, driving or working with his arms at shoulder level or above the head.
Plaintiff has a life expectancy of 45 years and a work life expectancy of 29 years. He claims that he has lost approximately $21,771.00 in past lost wages and his future loss of earning capacity, assuming he could earn minimum wage, amounts to $306,000.00.
Plaintiff argues that the jury award of $15,000.00 for pain and suffering, both physical and mental, past and future, is so low as to be an abuse of discretion. Based on the injuries to his cervical spine alone, without reference to his lower back, plaintiff feels the award should have been higher.
Plaintiff argues that several cases could be used as precedent in determining the quantum of damages including Pearce v. Baltazar, supra, Roger v. Cancienne, 538 So.2d 670 (La.App. 4th Cir.1989), McDonald v. South Central Bell Telephone Company, 377 So.2d 1044 (La.App. 4th Cir. 1979), and Rollings v. Winn Dixie Louisiana, Inc., 439 So.2d 1132 (La.App. 4th Cir. 1983).
Defendants argue that a hypothetical scale of prior awards made for merely generically similar medical injuries cannot be used to determine whether or not the trier of fact has abused its discretion in an award to a particular plaintiff under the facts and circumstances peculiar to that case. Reck v. Stevens, 373 So.2d 498 (La. 1979).
Defendants insist that the jury was well-within its discretion in making its award. Plaintiff did not carry its burden of proof in showing that his lumbar injury and subsequent surgery were causally related to the automobile accident.
However, defendants contend that if any case is to be used as a guide for quantum in this matter, the case of Eck v. O'Flarity, 521 So.2d 459 (La.App. 4th Cir.1988) is much more analogous to the case at bar than any of the cases cited by plaintiff. In Eck, supra the sole issue determined at trial was the quantum of damages to be awarded to a plaintiff who received a hairline fracture of the twelfth thoracic vertebra. Mrs. Eck, whose injury resulted in a 10% permanent physical impairment, returned to work within six weeks of the accident. The Eck jury awarded her $10,000.00 in general damages and roughly $5,000.00 for medical expenses and lost wages.
We find that the jury did not abuse its discretion in awarding plaintiff $17,825.00 in the instant case.

COURT COSTS
Defendants contend that costs of the proceedings, as a matter of law, should not be assessed against a wholly prevailing party. Marcel v. Allstate Insurance Company, *704 536 So.2d 632 (La.App. 1st Cir.1988), writ denied 539 So.2d 631 (La.1989). In the absence of some reason in equity, costs generally follow the final judgment in favor of the prevailing party. Abbott v. Dunlap, 541 So.2d 995 (La.App. 3d Cir. 1989), writ denied 544 So.2d 403 (La.1989). In the instant case, once the settlement amount was credited against the jury's verdict, the effect was a zero verdict in favor of defendants.
Defendants rely on Johnson v. Marshall, 202 So.2d 465 (La.App. 1st Cir.), writ denied 203 So.2d 555 (La.1967) which they insist is analogous to the instant case. In reversing the trial court's assessment of costs against defendant, the First Circuit looked to factors such as whether the trial was prolonged or the costs were increased by any action on the part of defendant. Using this reasoning, defendants maintain that the trial court's judgment assessing costs against them should also be reversed.
We disagree. By the jury's verdict the plaintiff would have taken $8,734.25. It was less than the amount plaintiff had previously settled for but nevertheless the verdict was in plaintiff's favor. The jury found defendants 49% liable as the providers of uninsured/underinsured motorist coverage for the plaintiff. Defendant was rightfully cast to bear costs of these proceedings.
For the foregoing reasons, we affirm the trial court's judgment.
AFFIRMED.