11WALTZER, Judge.

STATEMENT OF THE CASE

Gregory Royal, a guest passenger in a U-Haul truck, sued his driver, Darryl N. Cot-tles, Jr., U-Haul of Colorado, Inc., owner of the truck, U-Haul of Louisiana, Inc. (originally named incorrectly as U-Haul of South Louisiana, Inc.), lessee of the truck, Marilyn Hayes, driver of a Hyundai automobile struck in the rear by the U-Haul truck, and Hayes’s insurer, Allstate Insurance Company. Royal claimed damages for injuries allegedly caused by the negligence of Cottles and of Hayes.
Allstate and Hayes answered, filed a cross-claim against Cottles and the U-Hául companies, and filed a request for trial by jury. On 26 February 1992, the trial judge granted a jury order and Allstate and Hayes paid the jury fee that same day.
U-Haul of Louisiana, Inc. answered the petition.
On 2 November 1992, Royal settled and dismissed his suit against the U-Haul companies and' settled and dismissed his suit against Cottles “up to the $10,000 policy limits of Republic Western Insurance Company.”
On 11 July 1995 the trial court granted Royal’s motion to set the Case for jury trial, and, following pre-trial, trial was set for 3 April 1996. On 6 March 1996, the trial court rendered a jury trial order pursuant to La. C.C.P. art. 1734, and Allstate posted additional bond that same day.
12Trial was continued at Royal’s request on 25 March 1996. On 19 September 1996, the trial was reset for 5 February 1997.
At trial, counsel for Royal and Allstate stipulated that “the value of the case is below the $20,000 jurisdictional amount for a jury trial.” Following trial before the trial judge, and notwithstanding Royal’s stipulation as to the value of his case, by judgment dated 19 February 1997 the trial court awarded Royal damages in the amount of $26,632.09 and cast Cottles with 75% of fault and Hayes with 25% of fault for the accident. From this judgment Hayes and Allstate appeal. Because we find there is no credible evidence of record to support a finding that Hayes was at fault in causing the accident, we reverse.

STATEMENT OF FACTS

On 26 January 1991, at about six o’clock in the late afternoon, on the Claiborne Avenue overpass ramp to Interstate 10, a U-Haul truck driven by Cottles, in which Royal was a passenger, was entering the ramp at a speed of about 45 miles per hour when it struck from behind a car being driven by Hayes into merging traffic.
*1262 Royal testified that there was no traffic in front of Hayes’s ear blocking her passage. He based this testimony on what he noticed the traffic situation to be after he got out of the truck.
Louis Casimere, Jr., who was driving his automobile in the right lane about fifty feet behind the accident, testified that he was travelling at 50 miles per hour when he saw Hayes’s ear in the left lane of traffic and saw the U-Haul truck run into the back of the stopped car. Casimere was not named as a witness during discovery, and his name appears in the record for the first time in the pre-trial border, misspelled as “Louis Cashmere” without an address and without a statement that he allegedly witnessed the accident. His trial testimony was seriously questioned during cross-examination. He testified initially that the Hayes car was coming back toward him, indicating that Hayes essentially backed into the U-Haul truck. Later in his 'direct testimony, he retreated from that implausible scenario and testified that the car was stalled or stopped. On cross examination, he changed his testimony yet again and admitted that the Hayes car may not have been stopped or stalled, but was moving slowly. Casimere could not correctly state the number of people in each vehicle, the color of the Hayes vehicle, the driver of the car or the type of U-Haul truck, and he did not recognize Cottles as the truck driver. Also suspect was his testimony concerning his actions after he saw the accident. He testified that he exited from the Interstate at Orleans Avenue and parked his car on the side of a street near the Morris F.X. Jeff Municipal Auditorium and walked back to the scene of the accident where the Claiborne Avenue overpass meets Interstate 10. He testified that he asked the occupants of the truck if they were hurt — to which they responded negatively — and then called for the police on a cellular phone. He gave no explanation as to why he would undertake to leave his car at that distance and walk back through interstate traffic to the scene of what was apparently a minor “fender bender” type of automobile accident, with no apparent injury to the occupants of the truck and car or serious vehicular damage, particularly in light of the fact that the accident took place in a well-trafficked area and there was no testimony that any of the occupants of the ear were in imminent danger by reason of lateness of night, remote location or dangerous neighborhood.
| .[Casimere testified that he reviewed documents concerning the accident that were supplied by Royal’s attorney, and that he spoke to the attorney; on cross-examination, he backed away from that statement, admitting only to having reviewed the police report, Defendant’s Exhibit 2, to refresh'his memory. It is suspicious that in light of the many areas in which his recollection was erroneous or lacking he was so certain that there was no impeding traffic in front of the Hayes vehicle, which he was approaching at highway speed from the rear.
Marilyn Hayes, a Registered Nurse since 1980 employed by Home Health Agency, testified that at the time of the accident she was driving her 1987 Hyundai with her two children, 12 year old Corey and 9 year old Coretta, returning to her home on St. Roch Street from visiting her mother at 3218 Second Street. She testified that the accident occurred on the on-ramp, and that traffic was heavy, with a line of four or five cars in front of her. She heard a screeching noise and traffic slowed down and she slowed down as well. She was trying to enter the Interstate, but other traffic was coming from the Car-rollton exit impeding her progress. The ear in front of her stopped, she stopped between one-half and one foot behind that ear and, as traffic began to move again but before she had picked up speed, the U-Haul truck struck her from the rear. Her testimony that there was no problem with her car was corroborated by the police report. She said Royal did not get out of the car. She denied having seen Casimere at the scene of the accident, and testified that several people passed after the accident and said they would call the police, who arrived within one-half hour. She testified that the people who offered assistance came from a different direction from that described by Casimere.
At the outset, we note that our examination of the record, both the transcript of testimony and the documentary evidence, *1263 convinces us that Royal’s testimony |5was internally inconsistent, contrary to the documentary evidence and not worthy of belief. We note further that the trial court referred to Royal’s testimony as having enough holes to constitute a Swiss cheese factory. Royal’s own attorney in his appellate brief states baldly, “Without mincing words, the plaintiff lied.” We agree.
Royal’s trial testimony was internally inconsistent concerning his current employment status. He denied having sued Cottles, although Cottles is the first named defendant in the case which was filed on Royal’s behalf, in which his deposition was taken, and which came on for trial. He could not recall having received settlement funds from his suit against Cottles, although he admitted that he “thought” he recalled receiving a settlement check from an unknown party. His testimony was inconsistent as to whether he had neck pain after this accident. It was also inconsistent as to whether he saw Dr. Stewart Altman for mid and low back, right forearm, neck and right leg pain and headaches after a June, 1993 accident. He denied having seen any witnesses to the instant accident; however, on re-direct examination, he testified that he “believes” he learned of a witness to the accident from Cottles, could not recall whether the witness was a man or a woman, and “perhaps” provided the name of the witness to his attorney.
Royal’s trial testimony also was inconsistent with that given in his deposition in several material respects. At trial, he could not recall the speed of Cottles’s truck, although at deposition he testified that Cottles was going 45 miles per hour, and testified, “We was going a little fast.” At trial, he denied that the truck hit the retaining wall of the roadway prior to striking into the rear of Hayes’s car; however, at his deposition he testified that Cottles’s truck hit the retaining wall before hitting Hayes. This trial testimony was further contradicted by Royal’s 1 (¡treating physician, Dr. Ott, who testified at trial that in his history, Royal told the doctor that the truck hit the retaining wall prior to the collision with the rear of Hayes’s car. His trial and deposition testimony also conflict as to whether he told the officer who investigated the accident that occurred in March, 1991, just two months after the accident in question, that he was injured..
In addition to internal inconsistencies in his trial testimony, and contradictions between his trial and deposition testimony, Royal’s trial testimony was contradicted by documentary evidence admitted at trial. He denied having seen Dr. Stewart Altman as a result of a third accident, this one having occurred in 1993, although Dr. Altman’s medical records indicate otherwise. At trial, Royal denied having told the police officer investigating the accident that is the subject of this lawsuit that he was not injured. Not only is this testimony contradicted by the police report, it is also contradicted by Royal’s deposition testimony. We note that the parties stipulated that if the investigating officer were called, he would testify to the accuracy of his police accident report. Royal also denied that he told Dr. Ott, his treating physician, that he was better after the accident in question and before the March, 1991 accident, a statement reflected in Dr. Ott’s testimony and records. Dr. Ott’s records also show that Royal did not claim radiating leg pain prior to the March, 1991 accident, although Royal testified at trial that he complained of such pain to Dr. Ott after the accident in question and prior to the March, 1991 accident. Royal denied that he had injured his back in 1990 and been treated at Touro, which is contrary to the history he gave to Dr. Ott and which was memorialized in Dr. Ott’s records. His denial of having suffered injury in the June, 1993 accident is contradicted by the police report of that accident that shows he reported the injury to the investigating officer. Royal 17also denied he made a claim for injuries suffered in the 1993 accident until confronted by the release he signed showing receipt of $4120 from Louisiana Landscape, Donald Shelton and Allstate, resulting from the June, 1993 accident. This release was offered and admitted as Defendant’s Exhibit 1.

FIRST ASSIGNMENT OF ERROR: The trial court erred in ñnding Marilyn Hayes twenty-fíve percent at fault for the accident in question.

Appellate courts must constantly have in mind that their initial review function *1264 is not to decide factual issues de novo. When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings. However, this deference is not absolute. This Court has a constitutional responsibility to review the entire record and to determine whether, as a whole, it supports the judgment rendered by the trial court. See, LSA-Const. Art. 5, section 10(B); Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221; Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745. Where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989).
Our review of the record in its entirety convinces us that there is no credible evidence that the Hayes car was improperly stopped or stalled in the right of way. The police report negates any suggestion that the car had stalled. Royal’s [«testimony that there was no traffic impeding Hayes is, by his own admission, based on what he saw AFTER he exited from the truck following the impact, a time period clearly sufficient for the four or so vehicles Hayes testified were blocking her progress to have cleared into ongoing traffic. Casimere’s testimony is, we find, unworthy of belief. Its internal inconsistencies and contradictions and the inherent unreasonableness of his action in driving off the interstate and returning on foot to the scene of an apparently minor accident force us to conclude that a reasonable trier of fact could not credit his testimony. Hayes testimony is consistent with common experience in entering interstate travel lanes; the incessant ebb and flow of traffic, which sometimes causes an entering vehicle to slow or even come to a stop in order to merge is not uncommon. Indeed, such action is so common that it throws into sharp focus the highly negligent conduct of Cottles[1], who, according to Royal, sped up the ramp into Hayes’ car at a speed of at least 45 miles per hour, described by Royal as driving “a little fast.”
Louisiana courts have uniformly held that a following motorist in a rear-end collision is presumed to have breached the standard of conduct prescribed in La. R.S. 32:81 and is presumed negligent. The risk of a rear-end collision, whether the collision occurs in an emergency lane, or in a travelled portion of a roadway, is clearly within the scope of the statutory prohibition against following too close. Mart v. Hill, 505 So.2d 1120, 1123 (La.1987). The following motorist then bears the burden of proving by a preponderance of the evidence that he maintained a sharp lookout to the events taking place before him and was following at a sufficient distance from the preceding vehicle to allow him to stop safely under normal circumstances, or that the lead driver created a hazard which bthe following vehicle could not reasonably avoid. See Chambers v. Graybiel, 639 So.2d 361, 369 (La.App. 2 Cir.1994), writ denied 644 So.2d 377 (La.1994); State Farm Mut. Auto. Ins. Co. v. Hoerner, 426 So.2d 205, 208-09 (La.App. 4 Cir.1982), writ denied 433 So.2d 154 (La.1983); see also Welch v. Thomas, 263 So.2d 427, 429-30 (La.App. 1 Cir.), writs denied 262 La. 1132, 1137 and 1143, 266 So.2d 434, 436 and 438 (La.1972). Reliance on the doctrine exculpating a driver for negligence brought about by actions in a sudden emergency is not available under the facts of this case. This doctrine does not excuse improper vigilance, following too closely, failure to see an emergency situation in sufficient time to avert a collision, or creation of the emergency by his own negligence. Hoerner, 426 So.2d at 209. The “sudden emergency”, if any, in this case was created by Cottles’s speeding up the ramp and failing to proceed with sufficient care into a merging lane of highway traffic.
Royal relies on the rule enunciated by the Louisiana Court of Appeal for the First Circuit that, as an innocent third party allegedly *1265 injured in a collision between two drivers, Royal is entitled to the presumption that each of the drivers is guilty of negligence and the burden of proof falls upon each to exculpate himself from negligence proximately causing injury to the third party. Guidry v. Morgan, 623 So.2d 170, 173, citing Parker v. Travelers Insurance Company, 369 So.2d 1120 (La.App. 1 Cir.), writ denied 371 So.2d 1342 (La.1979). However, our review of the record shows that there was no evidence introduced to rebut the presumption that Cottles was at fault, and that the evidence exonerating Hayes from fault was reasonable and credible and uncontroverted by any credible evidence.
|10We are instructed that before a fact-finder’s verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict, and that the record establishes the verdict is manifestly wrong. Lewis v. State through Dept. of Transp. and Development, 94-2370 (La.4/21/95), 654 So.2d 311, 314; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Although we accord deference to the factfinder, we are cognizant of our constitutional duty to review facts, not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court’s verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support.
We find that there is no evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding that Hayes was 25% at fault for this accident, and we therefore reverse that finding for manifest, clear error. While we have given great weight to factual conclusions of the trier of fact, and have respected the relative responsibilities of the trial and appellate courts, our review of the record as a whole discloses no real conflict in the credible testimony concerning how this accident occurred, and no basis for imposition of any degree of fault on Hayes; neither has the presumption of Cottles’s fault been rebutted by credible evidence. See Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).

CONCLUSION AND DECREE

We find no evidence worthy of belief tending to support a finding that Hayes was responsible in any degree for the accident and injuries of which Royal | ncomplains. We therefore reverse the judgment of the trial court, dismissing Royal’s claim against Hayes and Allstate at Royal’s cost.
The remaining assignments of error are moot.

REVERSED AND RENDERED.

PLOTKIN, J., concurs.
ARMSTRONG, J., concurs in the result.

. Cottles was neither called nor subpoenaed to testify at trial.